UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE SUBPOENAS IN:
------------------------------- x
SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,   :   Miscellaneous Case No. 05-0476 (RMU)

    v.   :   (Related Cases:
         Civ. No. 05-11805-NMG
RICHARD F. SELDEN,   :   Civ. No. 06-11807-NMG
         Pending in the United States District
        Defendant,   :   Court for the District of Massachusetts)

        and,

FOOD AND DRUG ADMINISTRATION,   :   **EXPEDITED**
         **HEARING REQUESTED**
        Interested Party.
------------------------------- x

**RICHARD F. SELDEN'S MEMORANDUM
IN SUPPORT OF HIS EMERGENCY MOTION
TO COMPEL FOOD AND DRUG ADMINISTRATION
COMPLIANCE WITH THIS COURT'S AUGUST 16, 2006 ORDER**

        Joseph L. Barloon (D.C. Bar No. 459626)
        Michael P. Kelly (D.C. Bar No. 473580)
        SKADDEN, ARPS, SLATE,
           MEAGHER & FLOM LLP
        1440 New York Avenue
        Washington, D.C. 20005
        (202) 371-7000

        Thomas J. Dougherty
        Justin J. Daniels
        SKADDEN, ARPS, SLATE,
           MEAGHER & FLOM LLP
        One Beacon Street
        Boston, Massachusetts 02108
        (617) 573-4800

Dated: November 8, 2006         Counsel for Richard F. Selden

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 4

    I.    THE FDA IS FAILING IN TWO CRITICAL RESPECTS
        TO COMPLY WITH THIS COURT'S AUGUST 16 ORDER ......................... 4

        A.    The FDA Claims It Cannot
              Complete Production Until Mid-2008 ....................................................... 4

            1.    A Protective Order Is The Appropriate Solution ............................. 5

            2.    In Any Event, The FDA Should Be Required To
                 Produce All Documents By The January 29, 2007
                 Document Production Cut-Off In The SEC Action ........................... 7

        B.    The FDA Should Be Ordered To Comply With Dr.
              Selden's Request No. 3 As Modified to 1998-2002 .................................... 8

    II.   DR. SELDEN REQUESTS THE COURT'S EXPEDITED,
        EMERGENCY CONSIDERATION OF THIS MOTION ............................... 10

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**   **PAGE(S)**

S.E.C. v. Heartland Advisors, Inc.,
   Civ. No. 03-1427, 2006 WL 2547090 (E.D. Wis. Aug. 31, 2006) .................................. 6

S.E.C. v. Rivlin,
   Civ. No. 99-1455, 1999 WL 1455758 (D.D.C. Dec. 20, 1999) ...................................... 6

S.E.C. v. Selden,
   445 F. Supp. 2d 11 (D.D.C. 2006) ...................................................................... 1, 3, 5

U.S. v. Niemoeller,
   Cr. No. IP02-0009-01-H/F, 2004 WL 1179446 (S.D. Ind. May 17, 2004) .................... 7

U.S. v. W.R. Grace,
   --- F. Supp. 2d ---, Cr. No. 05-07-M,
   2006 WL 2942707 (D. Mont. Aug. 9, 2006) ................................................................ 7


**OTHER AUTHORITIES**   **PAGE(S)**

21 C.F.R. § 20.86 ............................................................................................................... 6

21 C.F.R. § 312.84(d) ......................................................................................................... 9

21 C.F.R. § 314.100 ........................................................................................................... 9

21 U.S.C. § 331(j) ........................................................................................................... 6, 7

21 U.S.C. § 379(g) ............................................................................................................. 9

28 U.S.C. § 1905 ............................................................................................................ 6, 7

Administrative Procedure Act, 5 U.S.C. §§ 701-06 .......................................................... 3

CBER SOPP 8405, version #4 (eff. Sept. 20, 2004) .......................................................... 8

Fed. R. Civ. P. 65 ............................................................................................................... 3

Federal Declaratory Judgment Act, 28 U.S.C. § 2201 ...................................................... 3

Freedom of Information Act, 5 U.S.C. § 552 .................................................................... 3

Mandamus Act, 28 U.S.C. § 1361 ..................................................................................... 3

## PRELIMINARY STATEMENT

More than a <u>year</u> ago Richard F. Selden ("Dr. Selden"), former CEO of biotech firm Transkaryotic Therapies, Inc. ("TKT"), issued subpoenas to the United States Food and Drug Administration ("FDA") seeking materials critical to his defense against the Securities and Exchange Commission's ("SEC's") charges of securities fraud in <u>S.E.C. v. Selden</u>, Civ. No. 05-11805-NMG (D. Mass., filed Sept. 1, 2005) (the "SEC Action").[1]

On August 16, 2006, this Court granted Dr. Selden's motion to compel compliance with the subpoenas and denied the FDA's motion to quash. <u>See</u> Docket Nos. 18 & 19 (reported at <u>S.E.C. v. Selden</u>, 445 F. Supp. 2d 11 (D.D.C. 2006)). In its Memorandum Opinion, the Court specifically noted that "Selden wants these documents to prepare a defense to the pending action in the United States District Court for the District of Massachusetts. Thus, the FDA must engage Selden's request, and formulate a response, with dispatch (rather than place Selden's subpoena request at the back of the FOIA queue)." <u>Id.</u> at 14 n.7. The Court also directed the parties to submit a "joint status report outlining the parties' anticipated timing." <u>Id.</u> The parties filed the Joint Status Report with this Court (and, as per the Court's instructions, with the Massachusetts Trial Court) on August 25, 2006. <u>See</u> Docket No. 20.

The Joint Status Report accomplished several objectives:

<u>First</u>, it provided a means for the parties to negotiate the final terms of the FDA's agreed production. Indeed, in all but one (albeit very important) respect, <u>see</u> <u>infra</u> Section I.B., the parties reached agreement on every document request contained in the subpoenas. <u>See</u> Docket No. 20, Joint Status Report, Ex. A (attached hereto at Tab B).

---

[1]   A copy of the SEC's Complaint is attached hereto at Tab A.

Second, it crystallized the parties' remaining disputes concerning the FDA's compliance with the Court's August 16, 2006 Order. See id., Ex. B (attached hereto at Tab C).

Third, it made clear that notwithstanding this Court's admonition to the FDA that Dr. Selden needed the documents for his defense in the SEC Action, the FDA had no intention of accommodating the pretrial schedule in the SEC Action, and would only be willing to produce the documents within the next 22 months (i.e., by the middle of 2008). Because Dr. Selden's only interest in obtaining FDA discovery is for his defense against the SEC's fraud charges, the FDA's 22-month timetable amounts to a failure to implement the Court's August 16 Order.

On September 28, 2006, the Massachusetts Trial Court held a status conference concerning the pretrial schedule in the SEC Action. Regarding the FDA's 22-month delay, the Court made the following observations:

> THE COURT: I've read the papers and the background of this matter and am, I guess, equally concerned with the district judge in the District of Columbia that you're not getting sufficient cooperation from the Food and Drug Administration. I would ask your opinion as to whether an order of this court as opposed to an order from the district court in the District of Columbia would be beneficial . . .
>
> I would be inclined, if I have jurisdiction, to compel somebody, whether it's the Boston representative of the Food and Drug Administration or the director of the Food and Drug Administration in Washington, D.C., to appear in this court to explain to me why it should take 22 months to produce documents in a matter that is time-sensitive and in which the documents need to be had. We wouldn't put up with this from a private litigant. And I don't see -- at least last I heard, the government works for the people and not the other way around. I don't see why such an order shouldn't be, (a), entered and, (b), complied with . . .

2

> It seems to this Court that you have been energetic in trying to get that discovery. I don't think you can be faulted, having gone out the month after the last -- the scheduling conference and commenced an effort that has now gone on for -- what, 11 or 12 months?

9/28/06 Status Conf. Tr. at 3 & 5-6 (attached hereto at Tab D).

Consequently, on October 5, 2006, Dr. Selden, after conferring with the SEC, initiated a civil action in the District of Massachusetts against the FDA, seeking declaratory and injunctive relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-06, the Mandamus Act, 28 U.S.C. § 1361, the Freedom of Information Act, 5 U.S.C. § 552, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, to require the FDA's meaningful compliance with this Court's August 16, 2006 Order. On October 13, 2006, the Trial Court issued an order requiring the FDA to appear on November 3, 2006 and show cause:

> . . . why a preliminary injunction pursuant to Fed. R. Civ. P. 65 should not be issued requiring the FDA to comply, on or before November 30, 2006, with the Order of the United States District Court for the District of Columbia in S.E.C. v. Selden, Case No. 1:05-mc-00476-RMU (D.D.C.) entered on August 16, 2006, granting in its entirety Dr. Selden's motion to compel the FDA's compliance with two federal subpoenas in 2005.

See Notice of Court Action In Related Case, Docket No. 22, Ex. A.

On November 3, 2006, pursuant to the Order To Show Cause, the parties appeared before the Trial Court on Dr. Selden's preliminary injunction motion. At the conclusion of the hearing, the Court gave the following instructions:

> THE COURT: What I'm going to do is this: I'm going to extend the time periods for discovery that are either expired or about to expire 90 days. I'm going to instruct the plaintiff in this case, the defendant in the related case, that is Mr. Selden and its counsel, to pursue with all due diligence whatever remedy it believes, he believes, it has in the District Court for

3

> the District of Columbia with regard to the compliance by the Food and Drug Administration with the outstanding subpoenas, including, if he sees fit, any motion to that court to involve this Court in the process. That is, if there is an availability of transfer of jurisdiction over this matter -- the FDA claims there is none, I'm not so sure, but that is up to the plaintiff to follow up. But, in any event, to pursue as diligently as possible with the understanding that it has now a requirement that is put off by 90 days to complete the discovery in the SEC litigation.
>
> If either the plaintiff or the Food and Drug Administration want to further advise this Court on whether or not this Court can do anything further with respect to the controversy involving the discoverable documents, then I will entertain such further legal advice. Otherwise, I will take the matter under advisement, both the FDA's motion to dismiss and Mr. Selden's motion for a preliminary injunction. I'm not going to act upon them now. I'm going to review all of these papers. But with respect to the SEC case, the matter is delayed 90 days, but no more. We will see what transpires.
>
> The District Court of the District of Columbia should be advised of the matter present in this Court and understand what the status of the discovery order is here.

11/3/06 Hearing Tr. at 30-32 (attached hereto at Tab E).

Accordingly, pursuant to the Trial Court's instructions, Dr. Selden now moves this Court for action on the FDA's non-compliance with this Court's August 16, 2006 Order.

### ARGUMENT

I. **THE FDA IS FAILING IN TWO CRITICAL RESPECTS TO COMPLY WITH THIS COURT'S AUGUST 16 ORDER**

    A. **The FDA Claims It Cannot Complete Production Until Mid-2008**

The Trial Court has now extended the pre-trial calendar in the SEC Action twice, by a total of nine months, to accommodate the FDA's delay. As it noted during the last hearing: "It seems to me -- and just as a practical matter -- that this is the tail wagging

4

the dog." 11/3/06 Hearing Tr. at 19. The current schedule now requires all written discovery to be completed by January 29, 2007. Nevertheless, the FDA now says that it will need 22 months -- or until the middle of 2008 -- to complete the production. Surely this could not be the kind of "dispatch" or "prompt" response that this Court had in mind when granting Dr. Selden's motion to compel (see 445 F. Supp. 2d at 14 n.7), given that it would render the subpoenas essentially meaningless and deny Dr. Selden a fair defense against the government's enforcement action.

### 1. A Protective Order Is The Appropriate Solution

The FDA has articulated essentially one reason why its production will take 22 months: it asserts that it must engage in the time-consuming process of redacting from the production all information constituting trade secrets or the agency's deliberative process. However, there is a straightforward solution that would significantly streamline the FDA's production and cut the production time down dramatically; namely, a protective order. The Trial Court has already endorsed this approach:

> THE COURT: ... [W]hy not agree to some sort of protective order that limits the disclosure of any of this information to only those involved in this lawsuit? It's not, as I understand it, the intent of anybody to publicize any of this material to the general public. Its only relevance is to the SEC's claim against the plaintiff in this proceeding. So why can't the Food and Drug Administration agree to some sort of a protective order to avoid the necessity of having to make this search more onerous than it would otherwise be?

11/3/06 Hearing Tr. at 8. It is correct that Dr. Selden has absolutely no interest in disclosing the materials beyond the SEC Action and is perfectly willing to agree to an order governing their disclosure.

5

During the November 3, 2006 hearing, the FDA's counsel asserted that the agency has <u>no legal right</u> to produce unredacted documents, even if ordered to do so by an Article III court. See, e.g., 11/3/06 Hearing Tr. at 9. However, as the FDA's own regulations demonstrate, that is simply not the case. The FDA's regulations <u>specifically provide</u> for the disclosure of otherwise non-public information in connection with court proceedings:

> Data and information otherwise exempt from public disclosure may be revealed in [FDA] administrative proceedings pursuant to parts 10, 12, 13, 14, 15, 17, and 19 of this chapter <u>or court proceedings</u>, where data or information are relevant. <u>The [FDA] will take appropriate measures, or request that appropriate measures be taken, to reduce disclosure to the minimum necessary under the circumstances</u>.

21 C.F.R. § 20.86 ("Disclosure in administrative or court proceedings") (emphasis added).[2]

Further, this is not the typical case of a private party fighting over commercial issues or seeking to challenge a drug approval or denial. Here, the <u>federal government</u> has charged an individual citizen with securities fraud, which is "akin to a criminal prosecution." <u>S.E.C. v. Heartland Advisors, Inc.</u>, Civ. No. 03-1427, 2006 WL 2547090, *5 n.4 (E.D. Wis. Aug. 31, 2006). The government's conduct also implicates Dr. Selden's rights to due process. See <u>S.E.C. v. Rivlin</u>, Civ. No. 99-1455, 1999 WL 1455758, *3 (D.D.C. Dec. 20, 1999) (a defendant has "full due process rights" when "the SEC, pursuant to its investigation, either files a complaint or makes a criminal reference")

---

[2] The relevant statutory provisions governing confidentiality likewise contemplate such exceptions. See 28 U.S.C. § 1905 (prohibiting disclosure only to extent "not authorized by law"); 21 U.S.C. § 331(j) (permitting disclosure "to the courts when relevant in any judicial proceeding under this chapter").

6

(citation omitted).³

A protective order is precisely what is needed to protect the interests of the parties and should be entered here to permit prompt production of the subpoenaed materials pursuant to it.

### 2. In Any Event, The FDA Should Be Required To Produce All Documents By The January 29, 2007 Document Production Cut-Off In The SEC Action

Even if the Court declines to enter a protective order such that the FDA would be required to redact all documents to the extent necessary, the FDA's proposed 22-month schedule is not defensible. In response to the FDA's 22-month assertion, Dr. Selden now has agreed to <u>limit</u> his request for backup scientific reports so that <u>none</u> of those attachments need to be produced. Yet, the FDA's estimate of 22 months assumed <u>both</u> the delay needed for redaction and the need to review and produce scientific attachments. Neither is needed because a protective order obviates the former, and Dr. Selden has agreed not to require the latter. In addition, under the FDA's estimate, one person would need <u>six weeks</u> to review and process a <u>single box</u> of documents.⁴ Even a conservative estimate of the review time in a complex litigation would be no more than four to five days per box -- and now <u>much, much</u> less time would be required than the

---

³   Courts have expressly recognized the possibility of disclosure under such circumstances. <u>See, e.g.</u>, <u>U.S. v. W.R. Grace</u>, --- F. Supp. 2d ---, Cr. No. 05-07-M, 2006 WL 2942707, *5 (D. Mont. Aug. 9, 2006) (court's protective order is an "authorization by law" for purposes of 28 U.S.C. § 1905); <u>U.S. v. Niemoeller</u>, Cr. No. IP02-0009-01-H/F, 2004 WL 1179446, *3 (S.D. Ind. May 17, 2004) (disclosure pursuant to 21 U.S.C. § 331(j) allowed "when the information is relevant to a judicial proceeding").

⁴   This figure is derived as follows: The FDA estimates a total production of approximately 120,000 pages of documents. One standard size file box (or "banker's box") can hold approximately 2,500-3,000 pages of documents. FDA says it will take three people 22 months to complete this production, meaning that one person will need 22 months to complete approximately 13-16 boxes, or 6-7 weeks per box, per person. This estimate assumes Dr. Selden seeks the scientific attachments which often comprise the bulk of the documentation. He does not (<u>see</u> <u>supra</u>). Consequently, the pages sought are much less. Dr. Selden and TKT have themselves long ago produced more than 45,000 pages to the SEC, and the SEC received documents from the FDA.

FDA assumed if production occurs under a protective order without redaction or without production of scientific attachments. It is simply not reasonable for the FDA to insist on its drawn out schedule. The Court should order the FDA to comply with the subpoenas on a rolling, accelerated basis by no later than the end of the written discovery period in the SEC Action: January 29, 2007.

### B.  The FDA Should Be Ordered To Comply With Dr. Selden's Request No. 3 As Modified To 1998-2002

Importantly, Request No. 3, served October 2005, calls for the production of FDA Complete Response Letters (sometimes referred to as "Complete Review Letters" or "CRLs"). CRLs are official letters issued by the FDA to companies seeking domestic marketing approval for their products "when the complete review indicates that there are deficiencies remaining that preclude the approval of the application or supplement at that time." FDA Center for Biologics Evaluation and Research ("CBER") SOPP 8405, version #4 (eff. Sept. 20, 2004). Under FDA protocol, the CRL will: "Summarize all of the deficiencies remaining, and [w]here appropriate, describe actions necessary to place the application/supplement in a condition for approval." Id. Dr. Selden's original request sought the production of all CRLs issued by the FDA from 1987 to the present.

In response to the FDA's objection that such a request is burdensome, Dr. Selden has offered to narrow the request to only those CRLs issued between January 1, 1998 and December 31, 2002, inclusive, by CBER, including approved and non-approved products. See 11/3/06 Hearing Tr. at 30. However, the FDA agrees only to produce CRLs from 2000 and 2001 for approved products -- not for products (like Dr. Selden's) that were not approved by the FDA. That is an incomplete set of documents.

Any claim by the FDA that CBER's CRLs from January 1, 1998 to December 31, 2002 would be burdensome to produce is unpersuasive. CRLs are one of the FDA's central documents. CRLs are required by Congress to be submitted by the FDA to applicants in connection with the agency's statutory review deadlines set by the Prescription Drug User Fee Act ("PDUFA").[5] In addition, the dates of the CRLs are readily determinable because, by regulation, CBER is required to provide CRLs within 180 days of the initial submission of the application for approval.[6] This is not a request for miscellaneous administrative documents.

Further, the CRLs are critical to Dr. Selden's defense. TKT received such a CRL from the FDA in January 2001, as did TKT's "rival" Genzyme Corporation, in the FDA approval "race" about which the SEC has sued Dr. Selden. See, e.g., SEC Complaint (Tab A) ¶ 24. In total, five CRLs were sent to TKT and Genzyme, TKT's direct competitor in the race for approval, as part of the FDA application and review period taking place between 1998 and 2002. The SEC's complaint specifically focuses on this. See id. ¶ 13. Dr. Selden has subpoenaed the 1998-2002 CRLs to show that TKT's and Dr. Selden's response to CBER's CRL was normal, appropriate, and not improper as the SEC would have a jury believe, involving correct conduct, not deception. Those CBER CRLs from the same time frame as the CRLs for the TKT/Genzyme "race" focused upon by the SEC will permit Dr. Selden to prove his conduct was normal, proper and not deceptive. Further, TKT's application to the FDA was not approved by CBER. Consequently, the

---

[5] See, e.g., 21 U.S.C. § 379(g) (FDA's "process for the review of human drug applications" defined to include "[t]he issuance of action letters").

[6] 21 C.F.R. § 312.84(d) ("[Biologic] applications will be subject to the requirements and procedures contained in Part 314 or Part 600 of this chapter, as well as those in this subpart."); 21 C.F.R. § 314.100 (requiring action letter within 180 days).

FDA's resistance to providing CRLs for non-approved products (such as TKT's) deprives Dr. Selden of many of the very CRLs that he will use to show his responses were proper and not deceptive.

To the extent that this Court needs guidance from the Massachusetts Trial Court to resolve any of these issues, that Court has expressed its willingness to be helpful. As noted by the Trial Court during the November 3, 2006 hearing:

> THE COURT: The case at issue is pending in this court. The subpoena that we are fighting about bears upon the issues that are relevant to an action before this Court, not the District Court of the District of Columbia. And to say that this Court has no standing or jurisdiction to do anything to protect the integrity of its docket and to move its cases along doesn't strike me as logical.

11/3/06 Hearing Tr. at 19.

## II.  DR. SELDEN REQUESTS THE COURT'S EXPEDITED, EMERGENCY CONSIDERATION OF THIS MOTION

The Massachusetts Trial Court has now set a final cut-off of January 29, 2007 for the close of all document productions. That is 90 days extended from the already-extended pretrial schedule caused by the FDA delays. The FDA is a most critical witness for Dr. Selden's defense and without the requested discovery he will be substantially prejudiced in his ability to defend himself against the SEC's charges. Dr. Selden therefore respectfully requests that this Court consider his motion on an expedited, emergency basis. The SEC assents to this request; the FDA does not.

## CONCLUSION

For all of the foregoing reasons, Dr. Selden respectfully submits that this Court should grant his motion and order the FDA to comply with the Court's August 16, 2006 Order.

Dated: November 8, 2006  
       Washington, D.C.

Respectfully submitted,

/s/ Joseph L. Barloon  
Joseph L. Barloon (D.C. Bar No. 459626)  
Michael P. Kelly (D.C. Bar No. 473580)  
SKADDEN, ARPS, SLATE,  
   MEAGHER & FLOM LLP  
1440 New York Avenue  
Washington, D.C. 20005  
(202) 371-7000

Thomas J. Dougherty  
Justin J. Daniels  
SKADDEN, ARPS, SLATE,  
   MEAGHER & FLOM LLP  
One Beacon Street  
Boston, Massachusetts 02108  
(617) 573-4800

Counsel for Richard F. Selden

## CERTIFICATE OF SERVICE

I, Joseph L. Barloon, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants and that paper copies will be sent on November 8, 2006, to those indicated as non-registered participants, specifically:

> Jennifer L. Zachary
> Trial Attorney
> United States Department of
>    Health and Human Services
> Office of the General Counsel
> 5600 Fishers Lane
> Rockville, Maryland 20857
>
> Frank Huntington
> United States Securities and Exchange Commission
> Boston District Office
> 33 Arch Street, 23rd Floor
> Boston, Massachusetts 02110

Dated: November 8, 2006            /s/ Joseph L. Barloon
                                   Joseph L. Barloon